CHICAGO, ROCK ISLAND & PACIFIC RY. CO. ET AL v. BESSIE CAIN.

Decided December 31, 1904.

**1.—Charge—Assuming Fact.**

A charge is not on the weight of evidence as assuming a fact where it leaves to the jury to determine whether or not the fact existed.

**2.—Same—Request Necessary.**

Where a charge given is not affirmatively erroneous, but merely deficient in some particular, a special charge should be requested covering the deficiency, or the error will not be ground for reversal.

**3.—Release of Damages—Fraud—Evidence Raising Issue.**

In an action for personal injury and loss of baggage evidence considered and held sufficient to raise the issue of fraud on the part of the railroad company's claim agent in procuring from plaintiff a release of damages by representing that the paper he induced her to sign was merely a receipt for money he was giving her as an act of charity.

**4.—Assignment of Error.**

Where two assignments of error are submitted as one, followed by the single proposition that, "The requested charges presented the law of the case and should have been given," and the two assignments raise distinct errors relating to different rulings and different subjects, such assignments are not entitled to consideration.

**5.—Act of God—Rain Storm—Washout of Track.**

A fall of rain producing a volume of water so great that it could not reasonably have been anticipated and provided against by very skillful and competent railroad builders, taking into consideration the lay of the land there, will be deemed an act of God such as will render a failure to have sufficient openings and sluiceways for such a volume of water not negligence on the part of the railway company.

**6.—Same—Concurring Negligence.**

Where the railway company was guilty of negligence in running its train while an unprecedent rain storm was raging and at too high a rate of speed, and .this negligence concurred with the rain storm in bringing about a wreck of the train, the company is liable, notwithstanding the injury is due in part to such act of God.

**7.—Railroad—Negligence—Notice of Danger—Evidence.**

It was competent for a passenger on a train that was wrecked in a rain storm to testify that shortly prior to the wreck he, heard a railway employe say to the engineer of such train, "You had better not pull out, as I believe you will go into the river;" and it was immaterial that the wreck did not occur at the exact spot thus indicated.

**8.—Same—Opinion—Expert Evidence.**

Testimony by a railroad roadmaster that "the running of passenger trains over a track submerged with water is done with no danger if the train is running slowly, and especially is this true if a freight train has just been run over the track and made the crossing safely," was not admissible, since this was the opinion and conclusion of the witness on a matter not the subject of expert testimony under the circumstances shown.

**9.—Release of Damages—Fraud in Procurement.**

Evidence considered and held sufficient to sustain a finding that a railroad claim agent was guilty of fraud in procuring from plaintiff a release of damages for personal injury by purposely concealing from her the nature of the instrument she signed and inducing her to sign it by declarations of sympathy and solicitude for her.

Appeal from the District Court of Montague. Tried below before Hon. D. E. Barrett.

*J. A. Graham, Robt. Harrison* and *N. H. Lassiter,* for appellant.— The evidence showed that the appellee had compromised and settled all her claims for damages and had given the appellants a written release obtained for a valuable consideration and without fraud. Signing it under the circumstances that she did, she is presumed to have acquainted herself with the contents, and will not now be allowed to repudiate it. Railway Co. v. Smith, 68 S. W. Rep., 545; Railway Co. v. Fenn, 76 S. W. Rep., 597; Railway Co. v. McCarty, 60 S. W. Rep., 429; Hunt v. Wallace, 49 S. W. Rep., 675; McGee v. Verity, 71 S. W. Rep., 172; Railway Co. v. May, 18 S. W. Rep., 960; Brown v. Wabash, etc., Ry. Co., 18 Mo. App., 568; Railway Co. v. Weakley, 35 A. & E. Ry. Cases, 635.

*J. A. Templeton* and *J. M. Chambers,* for appellees.—1. The testimony, the exclusion whereof is complained of in this assignment, was the conclusion and speculative opinion of the witness on a matter not the subject of expert testimony and about which he had not shown himself qualified to testify as an expert. Mayton v. Sonnefield, 48 S. W. Rep., 608; Wolff Shirt Co. v. Frankenthal, 70 S. W. Rep., 378; C. R. I. & T. Ry. Co. v. Long, 65 S. W. Rep., 882; I. & G. N. Ry. Co. v. Beardon, 71 S. W. Rep., 558.

2. The fact sought to be proven by the proposed evidence was not the subject of expert testimony. Hurst v. Railway Co., 63 S. W. Rep., 695; Locke v. Railway Co., 60 S. W. Rep., 314; Gulf, C. & S. F. Ry. Co. v. Bell, 58 S. W. Rep., 614.

3. There was evidence raising the issue that Whitcomb concealed from appellee the true contents of the instrument which she signed, and the charges complained of were warranted by the evidence. I. & G. N. Ry. Co. v. Harris, 68 S. W. Rep., 887; Wintz v. Morrison, 17 Texas, 383, 384; I. & G. N. Ry. Co. v. Shuford, 81 S. W. Rep., 1194.

4. If the defendant was negligent in going out of Union City, or in operating its train at the speed same was being operated while an unprecedented storm was raging, or during an unprecedented rainfall, and if such negligence concurring with an act of God contributed to cause the wreck and the consequent injury of plaintiff, the defendant would be liable for such injuries, notwithstanding such wreck would not have happened but for such storm or rainfall. Dunsbach v. Hollister, 49 Hun, 352; Union Pac. Ry. Co. v. McCollum, 43 Pac., 97; P. & R. Ry. Co. v. Anderson, 39 Am. Rep., 778, 791; St. J. & G. I. Ry. Co. v. Hedge, 62 N. W. Rep., 889, 890; T. & S. Ry. Co. v. Brown, 46 S. W. Rep., 926, 929; N. Y. T. & M. Ry. Co. v. Green, 36 S. W. Rep., 814, 815; Same Case (Sup. Ct.), 38 S. W. Rep., 32; Texas & P. Ry. Co. v. McClane, 62 S. W. Rep., 565, 568; The Ontario, 37 Fed. Rep., 226; Handley v. Daly Min. Co., 49 Pac. Rep., 297, 298; St. L. A. & T. Ry. Co. v. McKinsey, 78 Texas, 299; Eames v. Railway Co., 63 Texas, 660; M. & St. P. Ry. Co. v. Kellogg, 94 U. S., 469; L. Ed. Book, 24, p. 259; Texas & P. Ry. Co. v. Bingham, 38 S. W. Rep., 164; Bunting v. Hogsett, 23 Am. St., 193, 195; Pa. Ry. Co. v. Hammill, 29 Atl. Rep., 153, 154; Union P. Ry. Co. v. Callahan, 56 Fed., 991, 993, 994.

SPEER Associate Justice.—This is an action by appellee against appellants to recover damages for injuries sustained in a wreck near Union City, Oklahoma. The petition alleged negligence on the ground that appellants had failed to provide a safe passageway for water through an embankment running across a draw at the point of the wreck, so that water accumulated at that place and flooded the track and washed it out; also that the appellants were negligent in operating the train through the storm that was prevailing at the time of the wreck. The principal defenses were that the wreck was occasioned by an unprecedented flood amounting to an act of God, and voluntary settlement and release by appellee of her cause of action for the sum of $35. Appellee replied that there was no consideration for such release, in that the $35 was given to her by the agent of appellants' as an act of charity, and further that he was guilty of fraud in obtaining the release from her. The trial resulted in a verdict in favor of appellee for the sum of $4,000.

Since the greater number of the assignments of error are predicated upon the charge, those portions complained of are here set out: "2. One of the defendant's rules introduced in evidence provided as follows: 'In case of extraordinary storms or high water trains must be brought to a stop and a man sent to examine bridges, trestles, culverts and other places liable to damage before passing over. Conductors and enginemen must make careful inquiries at all stopping places, and if necessary make extra stops to ascertain the extent and severity of the storm, protecting themselves as provided by the rules and taking no risk. When in doubt

as to safety they will place their trains upon the siding and remain there until certain that it is safe to proceed.' Now, you are instructed that the law does not say whether a violation of this rule would constitute negligence or not. But whether a violation of the same would constitute negligence or not is a question of fact to be determined by the jury from all the facts and circumstances in evidence, under the instructions here given you. And you are instructed that if you find that the defendants' agents and servants who were operating said train, violated this rule, and if you further find and believe that very skillful, prudent and competent persons, under similar circumstances and conditions, would not have violated said rule, then you will find that its violation was negligence on the part of the defendant. But unless you so find that very skillful, prudent and competent persons under similar circumstances and conditions would not have violated said rule, you can not find the defendant guilty of negligence on account of the violation of said rule."

"9. The defendant has pleaded that, through its claim agent, H. J. Whitcomb, it has made a settlement with the plaintiff for all injuries she may have received and personal property she may have lost by reason of said wreck, and in regard to this you are instructed that if you find from the evidence that said Whitcomb delivered to plaintiff the check for $35 offered in evidence, intending it as a payment for any claim the plaintiff might have against the defendant for whatever injury she may have received in said wreck and for whatever personal property she may have lost thereby, and if the plaintiff accepted said check and executed the release offered in evidence knowing that said Whitcomb intended it as payment for such injuries and personal property, then the plaintiff is bound thereby, and you will find for the defendant, even though you may believe that she was injured in said wreck on account of the negligence of the defendant, and that she sustained damage thereby in a greater amount than thirty-five dollars."

"10. If you find from the evidence that said Whitcomb represented to plaintiff that said wreck was caused by an act of God, and that the defendant was not liable to her for any of the consequences thereof, but that he would pay her $35 as compensation for the personal property she lost in said wreck, and if you believe from the evidence that the plaintiff believed said representation to be true, and that she accepted said $35 as compensation for her personal property only, and if said Whitcomb presented to plaintiff said draft for $35 in payment for said personal property and procured from her the receipt and release introduced in evidence, and that in so doing he represented to her that said receipt and release was only a receipt for the money he was paying her, and if you find that she accepted and cashed said draft believing that it was given to her by said Whitcomb as compensation for her personal property only, and that when she signed said receipt and release she did not know the contents thereof, and if you believe that said Whitcomb had concealed from her the fact that said instruments purported to be a release of any and all claims for damages which she might have against defendant growing out of said wreck, then you are instructed that such release will not affect the right of the plaintiff to recover for

any personal injury she may have sustained by reason of said wreck, provided you find that she otherwise had any right, under the evidence and the law as herein given you, to recover for such injury. But in that event you will not find for plaintiff in any amount for any personal property she may have lost in said wreck."

"11. If you find from the evidence that said Whitcomb represented to plaintiff that said wreck was caused by an act of God, and that the defendant was not liable to her for any of the consequences of said wreck, but that he would give her the sum of $35 as an act of charity, and if you believe from the evidence that plaintiff believed said representation to be true, and that she received and accepted said sum as a gift, and not as a settlement of any damages or losses which she may have sustained, and if you further believe from the evidence that said Whitcomb presented to plaintiff the draft and procured from her said receipt and release, and that in so doing he represented to her that said receipt and release from her was merely a receipt for the money he had given to her, and that she accepted and cashed said draft as a gift, and signed said receipt and release and did not know the contents thereof, and that said Whitcomb concealed from her the fact that said instrument purported to be a release of any and all claims for damages which she might have against the defendant growing out of said wreck, then you are instructed that said release will not affect the right of the plaintiff to recover for the damages sued for, if you find, under the evidence and the law herein given you, that she had any right to recover. But unless you find that at the time the plaintiff received said $35 from said Whitcomb she believed the representations made to her by said Whitcomb were true and that said Whitcomb was giving her said money as a gift, you will find for defendant."

The complaint with reference to the second paragraph of the charge is that it assumed that the appellants violated the rule in question, and in support of this contention the case of St. Louis & Southwestern Ry. Co. v. Smith, 63 S. W. Rep., 1064, is cited; but a comparison of the charge condemned in that case with the one above quoted shows a very broad distinction, in this, that in the present case it is clearly left to the jury to find whether or not the appellants' agents and servants who were operating the train violated the rule, while in Smith's case the jury was not authorized to find, but the court clearly assumed, "that Brahaney pulled the rope attached to the top of the" derrick. A charge very similar to the one under consideration was considered by us in the case of Texas & Pacific Ry. Co. v. Powell, 3 Texas Law Jour., 278, 79 S. W. Rep., 86, and held to be unobjectionable. See, also, Missouri, K. & T. Ry. Co. of Texas v. Jones, 4 Texas Law Jour., 80 S. W. Rep., 852; Blake v. Austin, 75 S. W. Rep., 571. Moreover, we would probably be justified in holding that the undisputed facts show that appellants' servants did violate the rule in question. But we do not place our decision upon this ground.

The ninth paragraph of the court's charge is criticised for a similar reason, in that the charge indicates to the jury that the appellee is bound by the written release only in the event that Whitcomb paid her $35, intending it as a payment for all claims that she should have on account

of the wreck, and that the appellee accepted the check and executed the release knowing that Whitcomb intended it as a payment for all of her injuries and the loss of her personal property. But we do not think the charge is to be thus construed. It is undoubtedly true, as the charge indicates, that if Whitcomb delivered to appellee the check for $35 as a payment in full for all her claims against the appellants, and she accepted the same and executed the release knowing of his intentions in this respect, that she would be bound thereby, and that the jury should find for the appellants. If, as contended by appellants, the jury should have been instructed to find for them if Whitcomb intended it as a release of all her claims whether she knew of such intention on his part or not, in the absence of fraud, the proper charge covering this phase of the case should have been requested. The charge given can not be said to be affirmatively erroneous, even if it is deficient. But we are inclined to think, in view of appellee's contention that the $35 was a gift to her, that the charge was accurately framed with a view not to exclude this issue.

To the tenth paragraph it is objected that there is no evidence that Whitcomb concealed anything from the appellee, and the charge was, therefore, in this respect without evidence to warrant its submission. But we are of the opinion that the evidence amply justified the submission of this issue. Appellee testified that she accepted the draft and signed the release when presented by Mr. Whitcomb, and further said: "I was lying on the bed when Mr. Whitcomb came in. I do not remember that Mr. Whitcomb told me what place he held, or that he was connected with the Rock Island, but Mrs. Richardson saw him coming, and she told me that he was a Rock Island official. I had not at that time thought of making any claim against the company. At that time I did not know what caused the wreck. Mr. Whitcomb, in talking about it, said that the wreck was caused by an act of God, and that the company was not liable for it. At the time I believed him. When he gave the $35 he said it was an act of charity. Then he asked me to sign a receipt for the $35. I did not think it was a release of all claims for personal injuries. He said the reason he was giving me $35 was that he was sorry. I don't think I could say positive that I did read that check. When I signed that release and accepted the $35 I believed and relied on the statements of Mr. Whitcomb. . . . The conversation just as it occurred was that Mr. Whitcomb came in and asked me my circumstances; I told him, and told him how I was situated there, with no money, and that I had lost a part of my clothing and things, and he said he would give me $35 as an act of charity; that he felt sorry for me. In a case like that I would have to accept charity from strangers. I had given no thought that the railroad company was liable, and did not know they owed me anything. I didn't give such a thing any thought until I found out how I was injured. . . . I did not read either of these papers when I signed them. Part of the release was read to me and part of it was told to me. Mr. Whitcomb would read them over to me a little and then look up and talk to me. It was presented for my signature, and I can not say that any effort was made to prevent my reading it. I was given to understand that it was a receipt

for the $35 he was to give me, and that is what I thought when I signed it."

This testimony is to some extent corroborated by that of the witness Liebler, who signed the release as a witness at the request of Mr. Whitcomb; as well also, by the statements of Whitcomb himself made to Dr. Richardson, that he gave Miss Cain $35 just through sympathy for her as an individual, and not from the company, and that he had no authority to give her anything. She is also corroborated by the testimony of Whitcomb, that he did tell her that the accident was the result of an act of God, and that the company was not liable. This clearly is sufficient to raise the issue that appellants' claim agent, in his zeal to make the best settlement possible for his companies, very adroitly concealed from the appellee the real nature of the transaction he was negotiating, and the scope of the instrument he was inducing her to execute. It is not necessary in order to raise the issue of fraud that a positive misrepresentation should have been made, but the circumstances attending the transaction may be looked to. It certainly can not be said that the circumstances here shown did not even authorize the submission of the issue to the jury.

What we have just said disposes of the first objection to the eleventh paragraph of the charge. The second objection is that this paragraph assumed that Whitcomb made the representation to her that the defendant was not liable, and that he would give her the sum of $35 as an act of charity. But in the very beginning of the paragraph it is distinctly submitted to the jury to find from the evidence that Whitcomb made such represenations to the appellee.

The fifth and sixth assignments of error will not be considered, because they are submitted as one assignment, followed by the single proposition that, "The charges presented the law of this case correctly and should have been given," while the first special charge refused presented the question of the burden of proof upon the issue of fraud in obtaining the release, and the second, the issue of mutual mistake in the preparation of the receipt. These assignments raising, as they do, distinct errors, relating to different rulings and different subjects, can not be grouped as they are attempted to be. But looking to the alleged errors, we would hold that both charges were correctly refused, the first because it excludes from the jury the issue of the gift of the $35, so distinctly raised by the pleadings and the evidence, and the second, because it seeks to have the court submit an issue which is neither pleaded nor raised by the evidence.

The following special charges were also refused: "Even though you may believe from the evidence in this case that the defendant was guilty of negligence in going out of Union City at the time and under the circumstances that it left there with its train, yet you will find for the defendant if you further find and believe from the evidence that the injuries complained of by plaintiff were caused by an act of God, either as the result of an unprecedented rainfall or wind storm raging at the time"; and, "Even though you may believe from the evidence in this case that the defendant was guilty of negligence in operating its train at the speed that it was going at the time of the accident, still

you will find for the defendant if you find that the plaintiff's injuries were produced by and resulted from an act of God in either an unprecedented downpour of rain or wind storm raging at the time and place of the accident."

The issue thus sought to be submitted was aptly covered by the court's charge in the following words: "Or, if you find that the amount of rain that fell in the vicinity of the wreck on the occasion in question was so great that it produced a volume of water so great that it could not have been reasonably anticipated and provided against by very skillful and competent builders, taking into consideration the lay of the land in that locality, then it will be deemed to be the act of God, and you can not find that defendant was guilty of negligence on account of insufficient openings through said roadbed." And again, "If the derailment of said train was the result of the wind or of any cause whatever other than negligence of defendant you will find for defendant." There is yet another sufficient reason for refusing these charges. If the appellants were negligent in going out of Union City, or in the matter of the speed at which the train was being operated while an unprecedented storm was raging, and if this negligence concurred with the act of God in bringing about the wreck and consequent injury to appellee, then the appellants would be liable, notwithstanding the wreck was due in part to a cause for which they were not responsible. There is evidence tending to show that appellants were negligent in both of these respects.

Neither do we find error in the court's rulings with respect to the admission or rejection of testimony. The testimony of the witness Bentley, a passenger on the wrecked train, that he heard one of the crew of the northbound train say to one of the trainmen of the southbound, or wrecked, train, "You had better not pull out from El Reno, as I believe you will go into the river," was admissible as tending to show notice to the crew of the wrecked train of the probably dangerous condition of the track in the vicinity of the wreck. This occurred at El Reno where the two trains passed, and the wreck occurred at a washout near the river. It is immaterial, we think, so far as the admission of this evidence is concerned, that the wreck did not occur at the precise point anticipated by the trainman giving the warning.

But if we were of the opinion that this evidence was inadmissible, it yet so indisputably appears that the crew operating the wrecked train had notice of the probably dangerous condition of the track, that its admission could hardly be held to be cause for reversal. The rain that had fallen and was then falling appears from the testimony of all the witnesses to have been an unusually heavy one, if not entirely unprecedented, and the whole face of the country had the appearance of being covered with water to such an extent that it looked like a river. One of the trainmen said to some of the passengers that they would bed or lie in the Canadian River that night. The conductor testified that he had slowed up coming toward the place of the wreck, because the engineer was feeling for the South Canadian bridge, and they intended to examine this bridge before crossing it. The engineer testified that he made up his mind that night after leaving Union City and observing the violence of the wind and rain to stop at the Canadian River and make

a thorough examination of the bridge, and also to run very slowly over a public road crossing between Union City and the river, which was about 200 yards below where they went into the ditch. He also said that it was an extraordinary storm, and he realized this at the time he left Union City, and appreciated the fact that he was taking some risk. The engineer said that his headlight and the lightning dazzled him so that he could not tell whether he was running through water or not, but that he was careful, running slow, and expected a washout at the crossing below. On the morning after the wreck the fireman is shown to have stated that he and the engineer were both expecting trouble at any minute and were standing out ready; that they were both expecting to jump as they feared trouble at any minute. With this evidence unobjected to before the jury, the admission of the testimony under consideration, if technically erroneous, could not possibly have injured appellants. Appellants offered to prove by their roadmaster Bolton "that the running of passenger trains over a track submerged with water is done with no danger if the train is run slowly, and that this was especially true if a freight train had just been over the track and made the crossing safely." This was excluded, and properly so we think. It was the conclusion and opinion of the witness, and can not be held to be the subject of expert testimony under the circumstances shown. That trains are sometimes safely operated over a submerged track does not tend to show that the operatives of the wrecked train were not negligent in undertaking to run their train across the track in question at the time they did. No effort was made to show that the conditions or surroundings of the cases in the witness's mind were similar to those existing at the time of the wreck. The testimony was therefore irrelevant and immaterial to any issue in this case.

There remains to be considered only the assignments complaining of the insufficiency of the evidence to support the verdict and judgment. On this it is sufficient to say that the evidence supports the material allegations of appellee's petition. There is ample evidence from which the jury might properly find that the opening in the embankment was entirely insufficient to accommodate the quantity of water that might reasonably be expected to flow across the track at this place. The testimony showed that the country drained by this draw was almost 1,000 acres; to accommodate this flow a thirty inch pipe was supplied, when an arch or culvert of at least six or eight feet would have been more appropriate. There was ample evidence that the rule provided by the company quoted in the charge above was not being observed by the trainmen at the time of the accident, but that the train was being operated at the rate of eighteen or twenty miles an hour, an excessively dangerous rate of speed considering the probably dangerous condition of the track and the hazard to the lives and limbs of the passengers. Some of the witnesses testified that at the time of the wreck the track was completely submerged with water, varying in their estimates from a few inches to two feet. In this condition it is not surprising that the train, running upon an embankment saturated and overflowing with water, caused the track to slide from its bed and precipitate the cars and passengers to the ditch below.

Neither can we say the appellee is bound by her release executed under the circumstances already referred to. Under the evidence the jury was warranted in finding that the $35 was not paid on account of the appellants, but was a gift from their claim agent Whitcomb to the appellee. They were also authorized to find that the agent was guilty of fraud in obtaining the release in the manner he did. There is no impropriety in a railroad company claim agent seeking an adjustment of a claim against his company upon the most advantageous terms to be had, but it is hardly consonant with fair dealing and honesty for him to come under the guise of an almoner, and by adroitly concealing his true mission to obtain from the injured person a release of a valuable cause of action for the trifling sum of $35. Under the circumstances of this case the jury was authorized to find that the agent purposely concealed from the appellee the nature of the instrument she was called upon to execute, and that she was deceived by his declarations of sympathy and solicitude for her, and thereby induced to sign an instrument of the nature of which she knew nothing. International & G. N. Ry. Co. v. Harris, 65 S. W. Rep., 887; Jones v. Gulf, C. & S. F. Ry. Co., 32 Texas Civ. App., 198, 73 S. W. Rep., 1082; International & G. N. Ry. Co. v. Shuford, 81 S. W. Rep., 1196.

We are also of the opinion that the verdict is not excessive. Appellee has sustained damages to the amount awarded by the jury.

All assignments are overruled, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.