TEXAS & PAC. RY. CO. v. HANSON.*
(No. 1663.)

(Court of Civil Appeals of Texas. Texarkana.
Nov. 9, 1916. Rehearing Denied
Nov. 16, 1916.)

1. REMOVAL OF CAUSES ⊂⇒27—RIGHT OF RE-
MOVAL.
Under Act Cong. Jan. 28, 1915, c. 22, § 5,
38 Stat. 804, declaring that no federal court
shall have jurisdiction of any action or suit
against any railroad company, upon the ground
that such company was incorporated under an
act of Congress, the fact that a railroad com-
pany was incorporated by congressional act does
not entitle it to remove an action from the state
to the federal courts.

[Ed. Note.—For other cases, see Removal of
Causes, Cent. Dig. §§ 64–68; Dec. Dig. ⊂⇒27.]

2. CARRIERS ⊂⇒320(11) — CARRIAGE OF PAS-
SENGERS—ACTIONS—NEGLIGENCE—EVIDENCE.
In an action against a railroad company for
injuries received by a passenger who fell in
stepping on a round piece of wood lying on the
car floor, the question of the negligence of the
servants of the company in failing to remove
the piece of wood *held*, under the evidence, for
the jury.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 1179, 1190, 1305; Dec. Dig. ⊂⇒
320(11).]

3. CARRIERS ⊂⇒330 — CARRIAGE OF PASSEN-
GERS—CONTRIBUTORY NEGLIGENCE OF PAS-
SENGER.
A carrier of passengers being bound to exer-
cise a high degree of care, a passenger who fell
on stepping upon a round piece of wood left in
the aisle of a railroad car cannot be held guilty
of contributory negligence in failing to discover
it, because the servants of the carrier who fail-
ed to discover the piece of wood were negligent,
for the passenger might proceed on the assump-
tion that the carrier had performed its duty.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 1370, 1372, 1373; Dec. Dig. ⊂⇒
330.]

4. TRIAL ⊂⇒252(10)—INSTRUCTIONS—APPLICA-
BILITY TO EVIDENCE—PASSENGERS.
In an action for injuries received by a pas-
senger who fell upon stepping on a piece of
wood, an instruction, directing the jury to find
in his favor if the carrier's employés permitted
the piece of wood to be placed in the car, or
caused and permitted it to be left in the car, can-
not, in view of other instructions, be held erro-
neous, because there was no evidence that the
employés consented to or directed the placing of
the piece of wood on the floor of the car, for
the jury obviously could not have understood
the instruction to relate to actual direction by
the employés or the giving of special permission.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 603; Dec. Dig. ⊂⇒252(10).]

5. DAMAGES ⊂⇒132(3)—PERSONAL INJURIES—
MEASURE OF DAMAGES.
An award of $25,000 in favor of a passen-
ger injured in a fall on a train so that both of
his legs were paralyzed, one arm was paralyzed,
and he was totally helpless cannot, where it
appeared that the injuries were permanent, be
held excessive.

[Ed. Note.—For other cases, see Damages,
Cent. Dig. § 374; Dec. Dig. ⊂⇒132(3).]

Appeal from District Court, Gregg County;
W. C. Buford, Judge.

Action by H. H. Hanson against the Texas
& Pacific Railway Company. From a judg-
ment for plaintiff, defendant appeals. Af-
firmed.

Appellee was a passenger on one of ap-
pellant's trains from Longview to Dallas.
Appellant's station (referred to in the testi-
mony as the "City Depot") in Dallas, where
appellee intended to leave the train, is 4,300
feet beyond the Union Station. After the
train passed the station last mentioned ap-
pellee went from the the seat he occupied
about the center of the coach he was in to
the rear end thereof to get a drink of water,
when he stepped upon a round piece of
wood, about 3½ inches long and three-fourths
of an inch in diameter, lying on the floor of
the coach, which, rolling under his foot,
caused him to fall violently to the floor,
whereby he sustained injuries to his spine,
resulting (the testimony on his behalf indicat-
ed) in a paralysis of almost his entire body.
Claiming that the presence of the piece of
wood on the floor of the car was due to neg-
ligence on the part of appellant, appellee
sued and recovered of it the judgment for
$25,000 from which the appeal is prosecuted.

Young & Stinchcomb, of Longview, and
Geo. Thompson and R. S. Shapard, both of
Dallas, for appellant. Lacy & Bramlette and
W. C. Shoults, all of Longview, and D. W.
O'Dell, and Gaines B. Turner, both of Ft.
Worth, for appellee.

WILLSON, C. J. (after stating the facts as
above). [1] The trial court did not err in
holding appellant was not entitled to remove
the cause from the state to a federal court,
on the ground that it was incorporated un-
der an act of Congress. Section 5 of the act
approved January 28, 1915, part 1, U. S.
Statutes 1914–15, p. 803. In the statute cit-
ed Congress declared:

"No court of the United States shall have ju-
risdiction of any action or suit by or against
any railroad company upon the ground that said
railroad company was incorporated under an act
of Congress."

[2] In support of a contention it makes that
the court erred in refusing its request to in-
struct the jury to find in its favor, appellant
insists there was no testimony tending to
show negligence on its part. It is urged that
the testimony did not show how, nor when,
nor by whose agency, the piece of wood came
to be on the floor of the car, and did show
that appellant's employés used due care to
discover and remove it. It must be conceded
that the direct testimony with reference to
the presence of the piece of wood in the car
went no farther than to show that it was
there when appellee fell, but we think it au-
thorized inferences which warranted the
finding involved in the verdict that appel-
lant's employés did not use the care they
should have used to discharge the duty they
owed appellee as a passenger to discover and
remove it in time to prevent the injury to

appellee. It appeared that the Dallas Fair, to which great numbers of people resort was open, and that the train was heavily loaded. The train porter testified:

"I cleaned the car between Terrell (31 miles from Dallas) and Forney (20 miles from Dallas). If I had seen the piece of wood on the floor I would have picked it up. I am most sure that I would have seen it if it had been there on the floor when I was cleaning the car. I did not see it when I cleaned the car."

The brakeman testified that it was a part of his duty "to look through the train and keep the aisle clear." He further testified:

"On this day there was a great many banana peelings, orange hulls, and goober peas on the floor of the aisle, and I was looking after that— they were not in the aisles so much as they were between the seats—wherever they were, I knew there was danger in their being there. * * * Supper time was coming on in the meantime (as the train moved from Terrell to Dallas), and people were getting busy eating. There is more throwing of refuse on the floor between Terrell and Dallas than anywhere else along about supper time. Dallas is usually the getting-off place. Dallas is a good large place, the largest city on the line; that is, it is the largest one that we go through. * * * After leaving the Union Station and before getting to the City Station I walked through the three coaches and then came back to where Mr. Hanson was hurt. When I called the City Station I did not see Mr. Hanson walking along right behind me. I don't think I looked back as I went out the door. * * * I was in a hurry, and just glanced over the car and directed the people who asked questions. If I had looked I could have seen this umbrella handle (referring to the piece of wood which caused appellee to fall) if it had been there."

This testimony, it seems to us, when considered in connection with that of appellee that the piece of wood was on the floor of the car as he approached the water cooler, tended strongly to show negligence on the part of the brakeman, and made it the duty of the court to submit the case to the jury; for if the piece of wood was then on the floor, it would have been reasonable to conclude it was there when the brakeman, who was just ahead of appellee as he approached the water cooler, passed by same; and if the brakeman could, as he said he could, have seen it, and did not, the inference would have been a reasonable one that he did not see it because he failed to discharge the duty he owed to appellee to discover it.

[3] In support of the same contention appellant further insists that the "undisputed testimony" showed appellee to have been guilty of contributory negligence which barred his right to a recovery because of negligence on its part. The argument is that "if the employés of the defendant should be held to be guilty of negligence in not finding and removing the stick, it is axiomatic that appellee should be held guilty of contributory negligence." If the respective duties of appellant and appellee were the same the argument would be valid. But they were not the same. Appellant owed to appellee the duty to exercise a high degree of care to discover and remove the piece of wood from the car. A duty to discover the piece of wood on the floor did not rest upon appellee. He had a right to assume that appellant had discharged its duty to discover and remove anything from the floor which rendered it dangerous for him to use it; and, in the absence of anything putting him on notice that the floor was unsafe for the use he made of it, he was not called upon to act otherwise than the way the testimony showed he did act. Railway Co. v. Shetter, 94 Tex. 199, 59 S. W. 533.

It follows from what has been said we are of opinion the second, and also the fifteenth and sixteenth assignments, should be overruled.

[4] The court instructed the jury to find for appellee, other conditions concurring, if they believed appellant's employés in charge of the train "permitted" the piece of wood "to be placed in the car, or caused and permitted it to be left in said car." It is urged that this instruction was erroneous, because, it is asserted there was no evidence to show that said employés "permitted" or "caused" the piece of wood to be on the floor of the car. It is true there was no testimony showing that appellant's employés "caused" the piece of wood to be where it was, or "permitted" it to be there, in the sense that they had knowledge of or had consented to its being there. But, we think, looking to the entire charge, as it should be assumed they did, the jury would not have understood that the words were used in that sense, and hence were not misled to appellant's injury as to the issue submitted to them. Railway Co. v. Keefe, 37 Tex. Civ. App. 588, 84 S. W. 682. We do not understand the ruling just made to be in conflict with the one made in Southwestern Telegraph & Telephone Co. v. Sanders, 173 S. W. 865, cited by appellant. In that case it appeared from undisputed testimony that the rope there in question, when furnished by the defendant to the plaintiff, was dry and perfectly safe for the use to be made of it, and that it was wet and unsafe when used by the plaintiff and his fellow servants because they had dragged it over wet ground. "In this state of the evidence," the court said, "the wet condition of the rope could not be attributed to any fault of the company, and an instruction which permitted its being held responsible for such condition was plainly unauthorized and prejudicial. It is equally clear that the submission of the issue of the company having furnished Sanders with a wet rope was erroneous; there being no evidence that it had done so."

[5] Appellant vigorously insists that the verdict is excessive. It has not been without hesitation that we have reached the conclusion that the contention should be overruled. There is nothing in the record, unless the amount of the verdict alone does so, which suggests that the jury in returning the

verdict might have been influenced by any consideration other than that of their duty. The cause was tried after more than a year's time had elapsed from the time appellee suffered the injury he complained of. He testified:

"The last time I had the use of either of my legs so far as I have knowledge was at the time just before I stepped on the stick. Since that time I have never been able to turn over in bed without assistance. My legs feel numb, and it feels like there is a chain or something around each one of my legs, and a little tingling sensation that feels sorter like ants crawling on me or something, and at times it worries me nearly to death. The sensation feeling like ants crawling on me extends the full length of my legs from the crotch down, and sometimes it gets up in this arm again just like it used to when I couldn't use it. * * * Whenever they lay me down and wherever they lay me down I stay right there. I have to stay there, because I can't move. * * * When they raise me up I can stay that way about an hour. When they lay me down, it takes me a day or two to get where I can get rest, and I have very severe pains in my head and neck when they straighten me up that way. * * * My bowels move involuntarily at times. * * * There is no involuntary movement of the kidneys that I am conscious of. My underwear is damp sometimes, and I don't know what causes it."

Physicians who examined and treated him testified that in their opinions appellee would never recover from the condition he was in.

When the testimony referred to and other testimony 'in the record is looked to, which the jury had a right to believe, we do not think it can be said that the sum found in appellee's favor will more than fairly compensate him for the financial loss and physical and mental suffering he has sustained, and in the future will sustain.

We have considered all the assignments in the briefs not disposed of by what has been said, and are of the opinion none of them presents a reason why the judgment should be reversed. Therefore it is affirmed.

