**BRAGG v. HOUSTON ELECTRIC CO.**
**(No. 1126.)**

(Court of Civil Appeals of Texas. Beaumont. June 21, 1924. Rehearing Denied June 25, 1924.)

**1. Carriers ⟜302(1)—Street car passenger may dispose of personal baggage in any way not endangering safety of fellow passengers.**

Street car passenger may carry personal baggage to his seat and control its disposition, except as restricted by reasonable regulation promulgated by carrier or by legislation, so long as he does not endanger safety of fellow passengers.

**2. Carriers ⟜302(1)—Duty as to removal of passenger's personal baggage from aisles stated.**

Carrier must exercise due care to discover and remove personal baggage placed by passenger in aisle of car in such position as to endanger fellow passengers, but is not insurer of passengers against such risks; duty to remove baggage arising only when carrier has actual notice of its presence or it has been there such time that it should have been discovered in exercise of due care, and injury to passengers should have been anticipated.

**3. Carriers ⟜280(1)—Duties in safe-guarding passengers stated.**

Carrier of passengers for hire must use highest degree of care consistent with nature and extent of business, not only to provide safe and suitable vehicles, but to maintain all such reasonable arrangements for control and supervision of passengers and its servants as prudence would dictate to guard passengers against dangers naturally to be expected in usual course of things, and employ sufficient number of competent servants to meet any exigencies which should reasonably be anticipated in exercise of high degree of vigilance.

**4. Carriers ⟜318(1)—Proof that accident would not have happened had conductor been on car insufficient to render carrier liable.**

To render street car company liable for injuries to passenger falling over suitcase in aisle of car operated without conductor, it is not sufficient to show that accident would not have happened had conductor been on car or that he would, or in exercise of due care should, have discovered and removed suitcase, in absence of statute or ordinance, requiring presence of conductor.

**5. Carriers ⟜283(5)—Carrier not relieved of duty to keep aisles free because not employing conductor or other servant to discover and remove them.**

Carrier cannot relieve itself of duty to keep aisles of car free from obstructions by failing to employ conductor or other capable servant to discover and remove them, it being necessary that motorman or some other servant discharge conductor's duties in such case.

**6. Carriers ⟜302(1)—When carrier not negligent in permitting obstruction of aisle of one-man car by personal baggage stated.**

Carrier, not required by nature and extent of business to have conductor on street car, is not negligent in permitting personal baggage of passenger to obstruct aisle, unless motorman had opportunity to discover and remove obstruction, or should have prevented passenger, on entering car, from carrying to seat baggage that might prove source of danger to other passengers.

**7. Carriers ⟜314(4)—Special exception that carrier was under no legal duty to operate two-man car held erroneously sustained.**

In action for injuries to passenger falling over suitcase in aisle of one-man street car, special exceptions that it was under no legal duty to operate two-man car held erroneously sustained, being mere general demurrer, and negligence depending on particular facts.

**8. Pleading ⟜228—Special exceptions that carrier was under no duty to operate two-man car held not sustainable as calling for statement of facts.**

In action for injuries to passenger falling over suitcase in aisle of one-man street car, special exceptions that defendant was under no legal duty to operate two-man car held not sustainable as calling for fuller statement of facts invoking such duty and showing proximate relation between negligence alleged and plaintiff's damage.

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**9. Pleading ⊚⇒205(3)—Complaint for injuries to passenger held not bad on general demurrer though pleading conclusions.**

Complaint alleging that plaintiff was defendant's passenger, nature and extent of her injury and amount of damage, that defendant was negligent in operating one-man street car, and that such negligence was proximate cause of injuries *held* not bad on general demurrer, even if such allegations of negligence and proximate cause were merely conclusions of pleader.

**10. Appeal and error ⊚⇒1040(4)—Sustaining of demurrers to complaint on ground that carrier was not bound to operate two-man car held prejudicial error.**

In action for injuries to street car passenger falling over suitcase in aisle, evidence as to time suitcase had been in aisle *held* sufficient to raise issue of negligence, so that sustaining demurrers on ground that defendant was under no legal duty to operate two-man car was not harmless error.

**11. Appeal and error ⊚⇒927(7)—Appellant given benefit of all evidence and reasonable inferences therefrom.**

As against instructed verdict, appellant's testimony should be taken as true, and she should be given benefit of all evidence, circumstantial or otherwise, bearing on her cause of action, as well as all reasonable inferences therefrom.

**12. Trial ⊚⇒142—Where different minds may reasonably arrive at different conclusions on unconflicting evidence, issue is for jury.**

Where unconflicting testimony discloses variety of circumstances from which different minds may reasonably arrive at different conclusions as to ultimate fact, jury must determine such fact, though trial judge be convinced as to what conclusion should be.

**13. Carriers ⊚⇒320(24)—Motorman's negligence in permitting passenger to carry suitcase into one-man car and place it in aisle held for jury.**

In action for injuries to passenger falling over suitcase in aisle of one-man street car, evidence *held* sufficient to take to jury question of motorman's negligence in permitting passenger to carry suitcase into car and place it in aisle.

**14. Trial ⊚⇒352(5)—Refusal to submit alleged grounds of negligence involved in another allegation submitted held not error.**

Refusal to submit to jury, as separate issues, grounds of negligence involved in another allegation of negligence submitted *held* not error.

On Rehearing.

**15. Appeal and error ⊚⇒1040(4)—Erroneous ruling sustaining demurrers not sustained because of appellant's failure to offer proof in support of allegations stricken out.**

Erroneous rulings sustaining demurrers to complaint should not be sustained on appeal because of appellant's failure to offer proof in support of allegations after they were stricken out, but appellant should be given opportunity to offer evidence on new trial.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by Mrs. Lorena Bragg against Houston Electric Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Woods, King & John, of Houston, for appellant.

Baker, Botts, Parker & Garwood, of Houston, for appellee.

WALKER, J. This suit was instituted by appellant against appellee to recover damages for personal injuries suffered by her while a passenger on one of appellee's street cars in the city of Houston, Harris county, Tex. Upon a trial to a jury a verdict was instructed against appellant, and judgment entered thereon.

Appellant alleged that as she was attempting to leave the car she stumbled over a large suitcase which had been placed in the aisle by one of the passengers, causing her to fall violently to the floor and to sustain serious and permanent injuries. She predicated her cause of action on the following grounds of negligence:

"XI. Plaintiff would further represent that each and all of her hereinbefore mentioned injuries, and each and all of the hereinbefore mentioned items of damages were and are the direct and proximate result of the negligence of the defendant company, its agents, servants and employés, in the following particulars, to wit: (a) In furnishing and operating over its line of street railway in the city of Houston, the above-described one-man car. (b) In furnishing and operating said car upon which the plaintiff was then and there a passenger, without a conductor or person charged with the duty of keeping the aisle of said car clear and free of suitcases and other like articles for the safety of its passengers. (c) In permitting a passenger to carry into said car the suitcase mentioned above, and to deposit the same in the aisle of said car where plaintiff and other passengers had to pass. (d) In not requiring said passenger to deposit and leave said suitcase on the front end of said car, which she could have done with perfect safety to plaintiff and other passengers thereon. (e) In failing to keep a lookout to prevent the passengers from taking into and depositing in said aisle the suitcase over which plaintiff fell."

The following exceptions, urged by appellee, were sustained by the trial court:

"Defendant further specially excepts and demurs to subdivision "a" of paragraph 11, for the reason that the defendant is under no legal duty to operate a two-man car, and for the further reason that the operation or furnishing of the one-man car could not be a violation of any legal duty owing by the defendant to the plaintiff, and, therefore, could not be a ground of negligence for which defendant will be liable in damages to the plaintiff. * * * Defendant specially excepts and demurs to subdivi-

sion "b" of said paragraph 11, for the reason that the defendant is not under any legal duty or requirement to operate a street car with a conductor and that the allegation of said subdivision "b" does not charge the defendant with the violation of any legal duty, and for the further reason that the defendant is not under any legal duty to furnish and operate a street car with more than one man, provided such method of operation be the usual, customary and standard method of operation by ordinary, careful, and prudent street car companies."

As to the circumstances attending appellant's injuries, she testified as follows:

"The street car that I boarded to come to town that morning was a one-man street car; it was a small car— You get on the front and there is only one man running it, there is no conductor on the car, just the one man, I judge he is known as the motorman. * * * The one man that was on the car occupied a position at the front end of the car, at the wheel. * * * I expected to get on the car and pay my fare; I did that; I dropped the fare in that little receptacle there— I mean the motorman, he was right by this place but I could not say how far. * * * I have testified that there was but one place of entrance and one place of exit on this car. This place of entrance and exit is at the front end of the car and the man operating the car occupies a position at the end of the car. The entrance and the exit, and the only ones on the car, are at the front where the man operating the car stands. * * * The car stopped at Polk and Caroline for us to board it; after boarding it we procured a seat and the car started to town, and my daughter and myself rode the same, and especially myself, until we reached Main and Texas. In going out of the car when ready to alight, we came out the same way we entered, there was no other way for us to get out of the car and alight from the car. * * * It was a small car, I know that; the aisle was very narrow. * * * When my daughter and myself got on the car, after paying our fare, we went to a seat and sat down; I don't think we went quite to the middle of the car, but somewhere near the middle I think it was, a little more to the front. * * * I cannot say exactly how the car was loaded when we got on it; I don't remember, but there were people on it; it was loaded before we got to town. When we got to town and before we got off the car was crowded; I mean by it being crowded that there were people standing in the aisle; they were standing because there was not enough seats. * * * There were several stops made, but I could not say how many. I do not recall how many streets there are from Texas to Polk, where I boarded the car, but I think there are about six or seven, and I think there were six or seven stops made. * * * I think the car I boarded stopped one or more times and took on passengers; I know it took on a load of passengers, and it stopped several times, but I do not know how many. * * * When I started to alight from the street car I fell; there was a suitcase in the aisle and I had some Christmas packages, and had them up in my arms because in getting out they would take up so much room, and I don't know where the suitcase got on, but it was in front of me; the

first I saw the suitcase was when I fell over it. * * * I did not see anything, a suitcase or other obstruction, in the passageway when I entered the car from the front after paying my fare. * * * If the suitcase had not been there—the passengers, most of them got off the car at Main and Texas—I would have had no trouble in getting out, if it had not been for the suitcase. * * * I don't think I had gone but a few steps from my seat when I fell. * * * I know I fell over a grip because when they picked me up there was the grip. * * * And the motorman came after the people got up, and picked it up and asked whose it was, and there was a lady sitting there, and she said it was hers. * * * It was a great big grip, the best I remember the biggest I ever saw. When I say grip, I mean a suitcase, a high, square suitcase. * * * I don't know, but it must have been kind of this way (indicating). I mean not sitting straight across, I think it was too large to go straight across, because when I got off it was lying that way (indicating). I don't know how to express it, but it was too long to sit straight across, and one end was against the end of the seat. It didn't go straight over, it hung on the seat and I fell on the seats in the street car on this left side. * * * I was on the floor and they picked me up, picked up my packages, and the motorman picked the suitcase up, and they helped me off the car and over to the sidewalk, and the motorman asked me if I was hurt and I said yes, I was hurt, right then. * * * As to how far apart the seats in that street car were, when you go in and sit down, your knees just about touch the other seats; there is not room for a suitcase in there; the seat in front of me would be almost against your knees; those seats in the car are in rows, but there is an iron, or something like that, that I suppose was to push them back and forth. * * * The seats come out there about that far, and there is an iron or something right in the side of the seat next to the aisle; the top part of the seats are further apart than down at the bottom; the seats, or rows of seats, occupy the sides of the car. There is one row on each side; the seats next to the wall go against the wall. I do not know just how far they extend or how wide they are; the seat is next to the wall, and there is this iron thing, and the aisle, between the iron pieces, at the top of the seats. I would say it is about 20 inches across the aisle, and at the bottom I would say about this wide (indicating), not so wide as they are at the top, and they come out in the iron part. * * * The feet and limbs of the other passengers on the car were right in between the seats; the seats were close together; my feet and limbs filled up the space, almost. As to what other space there was on the car there that was not occupied by the passengers, or their feet and limbs, there was just the front and rear platform and the aisle."

The witness H. F. Rulen testified as follows as to the manner of operating a one-man street car:

"As to how many employees they have operating them, if I am correct about it, they have one on a one-man car and two on a two-man car; I know that; one man is used in the operation of the small green car; it is the duty

of the operator on those cars to see to the payment of fares by passengers, as they enter; I mean by 'operator' the one who runs the car; it is his duty to run the car and also see to the collection of fares as they enter; as to how they arrange for the payment of fares, they have a fare box, and as passengers enter, they deposit fares in the box; that fare box is located at the right side of the operator, about two feet from him; the operator makes change for the passenger if he needs it.

"When the door is opened, for the purpose of taking on or letting off passengers, that is done by the operator with air; when the car stops, the operator, by the use of air, opens the door, ordinarily; there ought to be one place of entrance and one of exit on the car. I do not really know how the seats are constructed in the car; they are just stationery seats, different kinds; there is a row on either side, with an aisle between.

"A passenger on entering the car and paying his fare would be from three to five feet from the operator of the car; they would pass in on the same platform he is occupying, it is just an iron bar dividing them. I could not say how far from the front of the car this railing is; all I could do is give my opinion; I would say it is on, approximately, about a 45-degree angle, and subdivides the platform; I could not say about the place where you pass into the seating compartment; I do not know about that.

"The operator performs the duties of conductor on the one-man street car; he performs the duties of conductor and operator too. I say that the operator opens the door for the passenger to get on, and when he admits him to the platform he closes the door behind him, and sees that he pays his fare, and goes on into the car."

### Opinion.

[1] A passenger on a street car has the right to carry with him into the car his personal baggage and the further right to carry it with him to his seat and to control its disposition while a passenger, unless this right is restricted by a reasonable regulation promulgated by the carrier or by restrictive legislation. In the absence of such rule or legislation, the only limitation imposed by law on this right of the passenger to control the disposition of his baggage is that he must not dispose of it in such way as to endanger the safety of his fellow passengers.

[2] If the passenger should place his baggage in the aisle of the car in such position as to prove a source of danger to those who must use the aisle, the law imposes upon the carrier the duty of exercising due care to discover and remove the baggage from the aisle. This duty is not absolute as urged by appellant, for the carrier would thereby be made an insurer of its passengers against such risks of injury. The duty to remove the baggage arises only when the carrier has actual notice of its presence in the aisle, or upon a showing that it has been there a sufficient length of time before the accident as that, in the exercise of due care, it should

have been discovered. And even on that showing, the duty to remove the baggage does not arise unless, in view of all the surrounding circumstances, injury to its passengers should have been anticipated.

What we have said as to the duty of a common carrier to its passengers is supported by the following authorities. In Burns v. Railway Co., 233 Pa. 304, 82 Atl. 246, Ann. Cas. 1913B, 811, the Supreme Court of Pennsylvania said:

"Under the facts there was no presumption of negligence. The rule is that where a passenger is injured by anything done or left undone by the carrier, or its employees, in connection with the appliances of transportation, or in the conduct and management of the business relating to the same, the burden of proof is upon the carrier to show that such injury did not result from its negligence. But, to cast this burden upon the carrier, it must first be shown that the injury complained of resulted from something improper or unsafe in the conduct of the business or in the appliances of transportation. Thomas v. Railroad Company, 148 Pa. St. 180, 23 Atl. 989, 15 L. R. A. 416; Ginn v. Railroad Company, 220 Pa. St. 552, 69 Atl. 992; Sutton v. Railroad Company, 230 Pa. St. 523, 79 Atl. 719.

"The appliances of transportation referred to in these cases mean the roadbed, tracks, cars, engines, and all other machinery and equipment furnished by the railroad company and used in connection with the conduct and management of its business. A dress suit case belonging to a passenger is not such an appliance. The duty of caring for such small baggage primarily rests upon the passenger to whom it belongs. * * * The mere fact that the personal baggage of a passenger is in the aisle of a car at the exact time of the accident does not of itself raise a presumption of negligence on the part of * * * a railroad company.

"While it no doubt is the duty of the employees of a railroad company to remove the personal baggage of passengers from the aisles of cars, they must, in order to make it their duty to act, have notice that such obstructions are in the aisle, or the obstruction must have remained there for so long a time before the accident that in the exercise of due care, they would have discovered it before the accident occurred. * * * The railroad company cannot be charged with the negligence of a passenger, and its only negligence in such a case is in allowing the obstruction to remain there after notice, or after it should have had notice if due care had been exercised."

In Stimson v. Railway Co., 75 Wis. 381, 44 N. W. 748, the Supreme Court of Wisconsin said:

"The mere fact that it [satchel] was in the aisle or passageway of the car at the exact time of the accident does not, of itself, raise a presumption of negligence on the part of the employees of the Company. There may be a duty on the part of the employees of the Company to remove the personal baggage of passengers from the passage-ways of the cars, but, in order to make it their duty to act, there must be evidence showing, or at least tending

to show, that such employees had notice of such obstruction being in the aisle or passageway, or that it had remained there so long before the accident that, in a reasonably vigilant discharge of their duties, they could have discovered the obstruction before the accident happened, and failed to remove it. * * * All we have, therefore, is the one fact that, at the exact time of the accident, these satchels were in the aisle, and that plaintiff fell over them and was injured. The personal baggage of passengers is not 'a thing under the management of the defendant and its servants,' within the meaning of the rule stated in the cases above cited; and it therefore becomes necessary for the plaintiff to show, by other proof that the Company, or its servants were guilty of some negligence or want of ordinary care in regard to the satchels. It seems very clear that there is no evidence tending to prove such negligence."

43 L. R. A. (N. S.) 1050 announces the rule as follows:

"By the weight of authority, in order to hold a carrier liable to a passenger for injuries sustained by falling over baggage or other articles placed in the aisle by another passenger, the employés of the carrier must have had actual notice of the obstruction, or it must have remained there a sufficient length of time to affect them with constructive notice."

Railway v. Hanson (Tex. Civ. App.) 189 S. W. 289, cited by appellant in support of her proposition that appellee rested under the absolute duty to discover and remove the suitcase is not in point. In that case Hanson, the appellee, was injured by stepping upon a piece of wood, which caused him to fall violently to the floor of the coach. No one had the right to carry this piece of wood into the coach, nor was there any inference that the wood was under the control of some one who would exercise due care to protect the passengers from injury; while in handling personal baggage a carrier has the right to presume that its owner will handle it with due care, and is not required to protect its passengers against the baggage of their fellow passengers until visited with notice, actual or constructive, that its passengers are being exposed to danger. But the Hanson Case, as we understand it, does not hold that the carrier was even under the absolute duty to discover the piece of wood which caused Hanson's injury. The facts of the case show that a brakeman had just preceded Hanson down the aisle of the coach; that the piece of wood was on the floor of the coach when the brakeman passed by, and whether it had been there for a short or long time, the brakeman had the opportunity to discover it before Hanson was injured. The carrier under those facts rested under the duty to exercise due care to discover and remove the piece of wood, and as we understand it, it was held liable because of its failure to discharge that duty. As said by Judge Willson:

"* * * the inference would have been a reasonable one that he did not see it because he failed to discharge the *duty* he owed to appellee to discover it." (Italics ours.)

That is, in failing to discover the piece of wood, the brakeman failed to exercise that high degree of care imposed upon him by law.

[3] But, while appellee was not under the absolute duty to discover and remove the suitcase, in protecting its passengers from the risks of danger, from suitcases and other exigencies of its business, it was required—

"as a carrier of passengers for hire, to use the highest degree of care consistent with the nature and extent of its business, not only to provide safe and suitable vehicles for their carriage, but to maintain all such reasonable arrangements for control and supervision both of the passengers and of its own servants as prudence would dictate to guard its passengers, while they occupy that relation, against all dangers that are naturally and according to the usual course of things to be expected. It is bound to select and employ a sufficient number of competent servants to meet any exigency which, in the exercise of that high degree of vigilance and care to which it is held, it ought reasonably to have anticipated." Kuhlen v. Boston N. Street Railway Co., 193 Mass. 341, 79 N. E. 815.

[4] But under the rule thus announced on a charge of negligence against a carrier for failure to man its cars "with a sufficient number of capable servants," it is not sufficient to show that the accident complained, of would not have happened had a conductor been on the car, or, to apply the proposition to the facts of this case, that he would have discovered the suitcase, or, in the exercise of due care, should have discovered it, and in the exercise of due car should have removed it, thereby preventing the accident. By this we mean to say that in the absence of a statute or city ordinance requiring the presence of a conductor on a street car, the mere act of operating the car without a conductor does not constitute negligence, nor does a showing that his presence would have prevented the accident complained of convict the carrier of negligence. A carrier's duty to employ "a sufficient number of capable servants" is limited by the nature and extent of its business. In the exercise of that high degree of care required for the protection of its passengers, the common law does not enjoin upon a carrier the duty, nor impose upon it the burden, of employing more servants than necessary for the practical operation of its business, unless the nature and extent of its business is sufficient to carry the burden of the extra servant. A rule forcing a carrier to operate at a loss might be confiscatory, and, therefore, not "due process of law." The rule is thus stated by the Supreme Court of Minnesota in Palmer v. Winona R. & L. Co., 78 Minn. 138, 80 N. W. 869:

"In the absence of any valid law or ordinance regulating the matter, the mere fact that

in a particular instance an injury might have been averted if the street-railway company had employed two men to operate and manage its car, instead of one, is not the test of whether or not the company is negligent in failing to employ the second man. A number of other circumstances must be taken into consideration. Taking into consideration the expense of employing the second man on the car, are the amount of traffic on the streets, the amount of traffic on the cars, and the danger to be encountered in operating the cars over the particular route so great that the company is negligent in failing to employ the second man? A street-railway company may be guilty of negligence in failing to employ the second man in a large city, where the streets are crowded with pedestrians and vehicles, or the cars are crowded with passengers, or both, while it would not be guilty of negligence in failing to employ the second man in a small city, where there is less travel on the streets or in the cars, or both. Again, the rate of speed at which the street cars run, the absence or presence of grade railroad crossings which are dangerous, and other circumstances, should often be considered. See Booth, St. Ry. Law, §§ 308, 335."

[5] But a carrier cannot relieve itself of the duties to keep the aisles of its car free from obstructions by failing to employ a conductor or other capable servant. The duty devolving on a conductor in the operation of a street car, in his absence, must be discharged by some other servant. In this case, as there was no conductor on the car, it was necessary for the motorman to discharge the conductor's duties, as well as his own. And the car was specially built and equipped to permit him to do this efficiently. He was given charge over the passengers, receiving and discharging them, and collecting their fares. His car was so built as to give him a view of every passenger as he entered the car, and afford him opportunity to observe the things the passengers were carrying with them into the car.

[6] The opportunity of a motorman operating a one-man car to inspect the aisle of his car and to keep it clear from obstructions is limited by his duties as motorman. If because of the nature and extent of its business, a carrier does not rest under the duty of having a conductor on one of its street cars, it could not be convicted of negligence for something occurring in the aisle of the car, provided the motorman, in operating the car, had not had an opportunity to discover and remove the obstruction. It may be that the question will be for a jury to say whether the motorman should discharge the duty of protecting his passengers "against all dangers that are naturally and according to the usual course of things to be expected" by observing his passengers as they enter the car, and preventing them from carrying with them to their seats instruments or baggage that might prove a source of danger to the other passengers. Giving full recognition to the rule that a passenger has the right to

carry with him into the car his personal baggage and to dispose of it in the car, yet if the nature of the baggage is such, because of its size or otherwise, that a motorman should have anticipated danger to his passengers from such baggage, the duty would devolve upon him to see that the baggage was properly disposed of. In certain instances, it would be for a jury to say whether that duty should be discharged by preventing the passengers from carrying the baggage with him to his seat.

[7] On the principles involved in the foregoing discussion of a carrier's duty to its passengers in operating a one-man car, we make the following disposition of appellant's assignments of error:

(1) The court erred in sustaining appellee's special exceptions to the effect that it was "under no legal duty to operate a two-man car," and that it was not "under any legal duty to furnish a street car with more than one man." These exceptions were, in effect, nothing more than general demurrers, and raised the proposition that a street car company could not be held negligent in operating a street car without a conductor. On our conclusions, as stated supra, a street car company may be guilty of negligence in operating its cars with only one man in charge. On such an allegation of negligence, the issue must rest on the particular facts of each case.

[8] (2) The ruling on these demurrers cannot be sustained on the ground that the petition did not set forth the facts invoking the duty to man the car with a conductor, and showing the proximate relation between the negligence alleged and plaintiff's damage. These demurrers pointed out no omission in the pleadings, nor did they call for a fuller statement of the facts on the grounds of negligence attacked. The effect of these demurrers was to admit the truth of plaintiff's allegations, and to assert that they did not constitute a cause of action.

[9] (3) The demurrers cannot be sustained on the ground that plaintiff pleaded only legal conclusions, and, therefore, her petition was bad as against even a general demurrer. Appellant alleged that she was appellee's passenger, the nature and extent of her injury, and the amount of her damage. She also alleged that appellee was guilty of negligence in operating a one-man car, and in operating the car without a conductor, and that such negligence was a proximate cause of her injuries. The reasonable intendment of these allegations of negligence and proximate cause involved all facts necessary to make the act charged one of negligence, and to make such negligence a proximate cause of plaintiff's injury. Gulf Production Co. v. Bonin (Tex. Civ. App.) 242 S. W. 776; Millers Indemnity Co. v. Boudreaux (Tex. Civ. App.) 245 S. W. 1025. To charge that appellee was guilty of negligence in operating the

car without a conductor, and that such negligence was the proximate cause of the injury, may be nothing more than a conclusion of the pleader drawn from facts not revealed, yet such a defect in pleading can be reached only by a special demurrer directed against that defect. It cannot be reached by a general demurrer. The Chief Justice of this court said, in Saner-Ragley Lumber Co. v. Spivey, 255 S. W. 193:

"It may be, and is frequently the case, that a petition is indefinite and uncertain in the statement of facts upon which the plaintiff depends for recovery, and may consist largely of conclusions drawn by the pleader and stated as facts, but such defects as these in a petition are not reached by a general demurrer, but may only be successfully challenged by special exception."

(4) In view of another trial, we suggest that plaintiff amend her petition, if attacked by a proper special exception, and plead the facts invoking the duty to operate the car with a conductor, and showing the proximate relation between that negligence and plaintiff's injury.

[10] (5) The ruling on the demurrers cannot be sustained, as appellee insists, on the ground that the facts as developed failed to raise an issue of negligence in operating the car without a conductor, thereby rendering the ruling on the demurrers, even if error, harmless error. Appellee says:

"There is not a syllable of testimony from which it can be established with any reasonable degree of certainty that the suitcase over which Mrs. Bragg stumbled had been in the aisle prior to the accident any length of time."

While there was no direct evidence as to how long the suit case had been in the aisle before the accident, yet we think the evidence is sufficient to raise the issue, if not to establish it beyond controversy, that it was placed in the aisle when its owner took her seat, and that it remained there continuously until the accident. It reasonably appears that its owner was on the car for at least one block. From appellant's testimony, it appears that the suitcase was too large to go between the seats; that it was too long to set at right angles across the aisle; that at the time of the accident it was sitting obliquely across the aisle; that, though the car was crowded, no one was disturbed by its owner moving her baggage just prior to the accident; that the owner was not giving it her attention at the time of the accident; that there was no indication that she had moved it at all just prior to the accident; that because of its size no presumption would arise that she had had it in her lap, as insisted by appellee, or under the seat; that at the time of the accident the owner was remaining quietly in her seat, making no effort to leave the car.

[11] As against an instructed verdict, appellant's testimony should be taken as true, and she should be given the benefit of all the direct evidence, circumstantial or otherwise, bearing on her cause of action, as well as all reasonable inferences arising from the evidence.

[12] This rule is admirably stated by the Supreme Court of Ohio in Hickman v. State Life Insurance Co., 92 Ohio St. 87, 110 N. E. 542:

"In order that an issue should be required to be submitted to the jury it is not essential that there be such a conflict in the testimony of different witnesses as makes it necessary for the jury to determine disputes or questions of veracity. That is not the only province of the jury. They have another important function and duty. Where there is no dispute or conflict in the testimony of different witnesses, but nevertheless the unconflicting testimony discloses a variety of circumstances from which different minds may reasonably arrive at different conclusions as to the ultimate fact shown by such evidence, then it is the duty of the jury to determine such ultimate fact, even though the trial judge should himself be convinced as to what the conclusion should be. Of course, when the ultimate fact is undisputed there is presented simply a question of law. These principles are well fixed. Ellis & Morton v. Ohio Life Ins. & Trust Co., 4 Ohio St., 628 [64 Am. Dec. 610]; Cincinnati Street Ry. Co. v. Snell, 54 Ohio St. 197 [43 N. E. 207, 32 L. R. A. 276]; Darling v. Younker, 37 Ohio St. 487, 494, [41 Am. Rep. 532]."

As we construe the facts of this case, the issue was raised that had a conductor been on the car and discharged the duty required of him by law in protecting his passengers from obstructions in the aisle of his car, plaintiff would not have been injured. This conclusion, together with the other facts revealed by the evidence as to the nature of appellee's business, the amount of traffic, the Christmas season, the place where the car was being operated, etc., brought plaintiff's case within the rule announced in Palmer v. Winona R. & L. Co., supra, and was sufficient to carry plaintiff's case to the jury on the allegations of negligence in operating the car without a conductor.

[13] (6) If we give appellant the full benefit of her evidence as to the size of the suitcase, she should have been permitted to go to the jury on her allegation that appellee was guilty of negligence "in permitting a passenger to carry into said car the suitcase mentioned above, and to deposit the same in the aisle of said car, where plaintiff and other passengers had to pass." The motorman knew that the car was in his sole charge, and that he had no conductor to protect his passengers from obstructions in the aisle, and that he could only discharge that duty by watching the passengers as they carried their baggage into the car. The suitcase was carried into his car in his presence, and its size was open and obvious to him. If it reasonably appeared to him that the suitcase was too large to go between the seats, and if because of its size he should have antici-

pated that its owner would place it in the aisle, making it a source of danger to her fellow passengers, plaintiff's case should have gone to the jury. We believe the evidence in this case was sufficient to raise this issue of negligence against appellee. The issue of negligence in failing to stop this suitcase at the door would arise because of the nature of the motorman's duties at the place where plaintiff was injured, the extent of his traffic, and the fact that his duties as motorman prevented him from inspecting the aisle after he had received his passengers. Of course, negligence against the motorman could not arise unless he should have anticipated injury to his passenger from this suitcase.

[14] It seems to us that the grounds of negligence denominated by plaintiffs as "d" and "e," given supra, are involved in the allegation marked "c," and, therefore, the court did not err in refusing to submit them as separate issues for the consideration of the jury.

For the error of the court in sustaining the exception and instructing a verdict against appellant, the judgment of the trial court is reversed and this cause remanded for a new trial.

HIGHTOWER, C. J. I am in accord with Judge WALKER in the view that the judgment of the trial court in this case should be reversed and the cause remanded. But, because of the importance of the question, as I see it, I desire to add to what Judge WALKER has said these few remarks:

It is my opinion that in order for a plaintiff to predicate a cause of action against a street car carrier of passengers on its failure to have a conductor on the car, in addition to the motorman, the plaintiff's petition should be required to state specifically and definitely the facts which he contends required the presence of a conductor on the car at the time in question, and these facts should be sufficient to show with reasonable probability that the car could not have been operated by the motorman alone, in the exercise of due care on his part, with safety to passengers. In other words, the facts stated should be such as to show with reasonable probability that the exigencies and emergencies at the time in question were such that the motorman could not have been reasonably expected, in the exercise of due care on his part, to operate the car with safety to its passengers, he presuming due care on their part.

In addition to this, the facts stated, and not the mere conclusions of the pleader, should be such as to show that the absence of a conductor at the time was the proximate cause of the plaintiff's injury, as the term "proximate cause" is understood in law.

I have offered these few remarks because I do not believe that it should be left to a jury to find a street car carrier of passengers guilty of negligence because of its failure under any and all circumstances to have a conductor on its cars. If such latitude were permitted to the ordinary jury, the practical effect probably would be to compel such carriers to man all their cars with both motormen and conductors under any and all circumstances, whether due care required it or not, and this would be unreasonable and unjust, and, therefore, cannot be sanctioned in law.

On Rehearing.

WALKER, J. The opinion filed in this case by the Chief Justice was intended by him, and so considered by the other members of the court, as a concurring opinion and not as assumed by appellee in its motion for rehearing, a dissent. Chief Justice HIGHTOWER concurs in all the conclusions announced in the opinion of the court in the case and intended his remarks only as additional reasons why, if proper special exceptions should be urged against her petition, appellant should be required to plead the facts upon which she bases her cause of action.

As one of the reasons for reversing this case we held in our original opinion that the facts, as deduced, raised the issue of negligence in failing to have a conductor on the car. Appellee now insists that in reaching this conclusion we have based presumption upon presumption and inference upon inference, in violation of a long line of well-considered authorities. Appellant in this rehearing insists that the evidence does not raise the issue of negligence in failing to have a conductor on the car, and therefore, though a technical error may have been committed in sustaining the exceptions, it was harmless for the reason that, on the facts, no such issue was in the case. In answer to this argument we reaffirm our conclusion that the evidence did raise the issue of negligence and that the proposition of basing presumption upon presumption and inference upon inference does not arise in properly construing the evidence.

[15] But, if we are in error in this construction of the evidence, as actually offered —which was in support of the allegations held by the court to be legally sufficient— certainly we should not sustain these demurrers on the ground that appellant failed to offer proof in support of her allegations after they were stricken out, when such evidence would not have been admissible under the court's ruling, even if offered. If the court erred in sustaining these demurrers, appellant should be given the opportunity to offer evidence upon another trial.

As we set out in our original opinion, the evidence of appellant and the other facts up-

on which we based all our conclusions both of law and fact, we see no reason to incumber this record further by additional quotations from the evidence of the witnesses, and appellee's request for such additional references to the evidence of the witnesses is therefore denied, and the motion for rehearing is therefore in all things overruled.